## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WALKER DIGITAL, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 11-313-SLR |
| | ) | |
| EXPEDIA, INC., AMAZON.COM, INC., | ) | |
| AMERICAN AIRLINES, INC., and | ) | |
| ZAPPOS.COM, INC., | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| WALKER DIGITAL, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 12-140-SLR |
| | ) | |
| AMAZON.COM, INC., | ) | |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| WALKER DIGITAL, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 12-141-SLR |
| | ) | |
| BARNES & NOBLE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

| | |
|---|---|
| WALKER DIGITAL, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 12-142-SLR |
| | ) |
| EXPEDIA, INC., | ) |
| | ) |
| Defendant. | ) |

Richard D. Kirk, Esquire and Stephen B. Brauerman, Esquire, and Vanessa R. Tiradentes, Esquire of Bayard, P.A., Wilmington, Delaware. Counsel for Plaintiff. Of Counsel: Anthony G. Simon, Esquire of The Simon Law Firm, P.C., Marc A. Fenster, Esquire and Benjamin T. Wang, Esquire of Russ, August & Kabat, and Timothy E. Grochocinski, Esquire of InnovaLaw, LLC.

Richard L. Horwitz, Esquire, David E. Moore, Esquire, and Bindu A. Palapura, Esquire of Potter Anderson & Corroon LLP, Wilmington, Delaware. Counsel for Defendants Amazon.com, Inc, Zappos.com, Inc., and Target Corp. Of Counsel: Eliza V. Bechtold, Esquire, Klaus H. Hamm, Esquire, Salumeh R. Loesch, Esquire, Jeffrey S. Love, Esquire, Todd M. Siegel, Esquire, Philip Warrick, Esquire, Garth A. Winn, Esquire, Kristen L. Reichenbach, Esquire, and Carla Todenhagen, Esquire of Klarquist Sparkman, LLP.

William J. Marsden, Jr., Esquire and Gregory Booker, Esquire of Fish and Richardson, P.C., Wilmington, Delaware. Counsel for Defendant Expedia, Inc. Of Counsel: Ahmed J. Davis, Esquire, Gabriel Olander, Esquire, and Linhong Zhang, Esquire of Fish & Richardson P.C.

Chad S. C. Stover, Esquire of Novak Druce Connolly Bove + Quigg LLP, Wilmington, Delaware. Counsel for Defendant American Airlines, Inc. Of Counsel: John B. Campbell, Jr., Esquire and Phillip Aurentz of McKool Smith.

Philip A. Rovner, Esquire and Alan R. Silverstein, Esquire of Potter Anderson & Corroon LLP, Wilmington, Delaware. Counsel for Defendant Barnes & Noble, Inc.

**MEMORANDUM OPINION**

Dated: June 19, 2013
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

On April 11, 2011, plaintiff Walker Digital, LLC ("plaintiff") filed Civ. No. 11-313 against ten defendants, including eBay, Inc. ("eBay"), for allegedly infringing U.S. Patent Nos. 7,831,470 ("the '470 patent") and 7,827,056 ("the '056 patent"). (Civ. No. 11-313, D.I. 1) Currently before the court in Civ. No. 11-313 is defendants Amazon.com, Inc. ("Amazon"), Zappos.com, Inc. ("Zappos"), and Expedia, Inc.'s motion to dismiss under Rule 12(b)(1) for lack of standing (Id., D.I. 242), and Amazon and Zappos' motion for leave to file amended answers (Id., D.I. 258).

On February 7, 2012, plaintiff filed separate actions against defendants Amazon, Barnes & Noble, Inc., and Expedia, Inc., alleging infringement of U.S. Patent No. 8,112,359 ("the '359 patent"). (Civ. No. 12-140, D.I. 1; Civ. No. 12-141, D.I. 1; Civ. No. 12-142, D.I. 1) Currently before the court are these defendants' motions to dismiss under Rule 12(b)(1) for lack of standing. (Civ. No. 12-140, D.I. 75; Civ. No. 12-141, D.I. 52; and Civ. No. 12-142, D.I. 44)

The court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a). For the reasons that follow, the defendants' motions to dismiss are granted.[1]

## II. BACKGROUND

On April 11, 2011, plaintiff filed Civ. No. 11-315 against numerous defendants, including eBay, alleging infringement of U.S. Patent No. 7,236,942 ("the '942 patent"). (Civ. No. 11-315, D.I. 1) In order to settle Civ. No. 11-315, plaintiff and eBay, Inc. ("eBay") entered into a Confidential Settlement and License Agreement ("Settlement

---

[1]The motion for leave to file amended answers (Civ. No. 11-313, D.I. 258) is denied as moot.

Agreement"). Pursuant to the Settlement Agreement, plaintiff

> grant[ed] to EBAY, effective immediately,[2] an irrevocable,
> nonexclusive, fully paid-up, worldwide license, under the
> PATENT RIGHTS to use, make, have made, sell, offer to
> sell, modify, import, export, and otherwise offer, dispose of,
> distribute, display, host, advertise, and/pr promote any
> COVERED PRODUCT directly or indirectly through any
> channel, including through multiple tiers of distribution.  The
> license grant herein also extends to EBAY THIRD PARTIES
> but only with respect to COVERED PRODUCTS.

(Civ. No. 11-313, D.I. 244, ex. I at 9)  The phrase "PATENT RIGHTS" was defined in

the Settlement Agreement as follows:

> "PATENT RIGHTS" shall mean any patents or patent
> applications worldwide, existing presently or in the future,
> owned or controlled by WALKER DIGITAL presently or at
> any time in the future, including but not limited to:  (a) U.S.
> Patent Nos. 7,236,942 and 7,827,056 and (b) the entire
> families of U.S. Patent Nos. 7,236,942 and 7,827,056
> anywhere in the world, including but not limited to all of their
> parents, continuations, continuations-in-part, divisionals,
> reissues, and re-examinations; (c) all patent applications or
> patents claiming priority to any of the foregoing patents or
> claiming priority to any application that led to any of
> foregoing patents; and (d) all foreign  counterparts to any of
> the foregoing.  WALKER DIGITAL represents that a current
> list of worldwide patents and patent applications that
> compris[e] PATENT RIGHTS is attached as Appendix B.

(*Id.* at 3-4)  The Settlement Agreement also contained a standard merger clause,

acknowledging that "this Agreement sets forth the entire agreement and understanding

of the PARTIES hereto as to the subject matter hereof, and shall not be subject to any

change or modification except by the execution of a written instrument executed to by

authorized persons for the PARTIES hereto."  (*Id.* at 13)

---

[2]The parties do not dispute that the transfer of rights occurred at the execution of
the Settlement Agreement on December 9, 2011.

In addition to Appendix B, but neither mentioned in the body of the Settlement

Agreement nor separately executed, is a document labeled "EXHIBIT A, PATENT

PURCHASE TERMS." (*Id.* at 53) The first paragraph of this document provides as

follows:

### 1. SALE OF PATENTS

**1.1 Purchase and Sale.** Walker Digital LLC ("**Seller**" for purposes of this Exhibit A) hereby conveys, assigns, and transfers to eBay Inc. ("**Purchaser**" for purposes of this Exhibit A), and Purchaser hereby accepts, all right title, and interest in and to the patents and patent applications described on **Schedule A** (collectively, the "**Transferred Patents**"). The Transferred Patents include all counterparts, continuations, continuations-in-part, divisionals, reissues, reexaminations, and extensions thereof, and all current, future, or abandoned patents and patent applications (whether filed by Seller or Purchaser and whether filed before, on, or after the Effective Date) claiming priority from, derived from, or related to any of the foregoing in any jurisdiction. The sale of the Transferred Patents to Purchaser includes the transfer of (i) the right to sue and recover damages for past, present, and/or future infringement; (ii) the right to injunctive relief and; (iii) any and all causes of action relating to any of the inventions or discoveries described in the Transferred Patents. Seller reserves no rights whatsoever in the Transferred Patents.

(*Id.*) In section 3.1(e), the Seller represented that,

with respect to each Transferred Patent: (i) no action, suit, litigation, arbitration, investigation, prosecution, or other proceeding (a "**Proceeding**") is pending or, to the knowledge of Seller, threatened, nor has any claim or demand been made, which challenges or challenged the legality, validity, enforceability, or use by Seller or such Transferred Patent; and (ii) all maintenance, annuity, and other fees have been fully paid and all filings have been properly and timely made. . . .

(*Id.* at 54) Attached to Exhibit A is Schedule A; not surprisingly, many (but not all) of the

patents and patent applications listed on Schedule A are listed on Appendix B, the

"master list" of plaintiff's "PATENT RIGHTS."[3] (*Id.* at 56) Also listed on Appendix B are

---

[3]Specifically, all of the issued patents are listed, as well as all of the pending (as opposed to abandoned) patent applications. (*Id.* at 56)

3

the patents-at-issue (in the case of the '359 patent, the application relating thereto). (*Id.*

at 40, 49) The "Short Form Patent Assignment," attached as Schedule B and executed

subsequent to the Settlement Agreement, uses yet different language in describing the

property conveyed through the transaction at issue:

> (1) any and all improvement disclosed in **United States
> Patent Application Serial No.** _____ and
> entitled _____;
>
> (2) all original and reissued letters patents that have been or
> shall be issued in the United States and in all foreign
> countries on any of said improvements; and in and to all
> divisional, continuing, reissue, extension, substitution and
> renewal applications, and all other patent applications that
> have been filed or shall be filed in the United States and in
> any foreign countries, on any of said improvements; and in
> and to all rights attaching to said improvements (including
> any and all rights under the Hague Convention, the Paris
> Convention for the Protection of Industrial Property, and
> under the Patent Cooperation Treaty); and
>
> (3) all past, present and future proceeds of said letters
> patent (including, but not limited to, all license royalties and
> proceeds of infringement suits); and in and to any and all
> causes of action for past, present, and future infringement of
> any of said letters patent, or relating to any inventions or
> discoveries described therein, including the right to collect
> royalties for all such infringements and the right to sue on all
> such causes of action for its own use and benefit and the
> use and benefit of its successors, assigns and legal
> representatives.

(*Id.* at 57)

Schedule A of the Settlement Agreement lists U.S. Patent Nos. 6,694,300 ("the

'300 patent), 6,196,458 ("the '458 patent"), 6,898,570 ("the '570 patent"), and the

applications for each such patent. (*Id.* at 56) The genealogy of the patents-at-issue all

relate back to one or more of such patents. More specifically, the **'470** patent is a

4

continuation-in-part of an application, which is a continuation-in-part of the '300 patent;
the **'470** patent is also related to the '458 and '570 patents. (*See* '470 patent, 1:35-55)
The **'056** patent is a continuation of an application, which is a continuation-in-part of the
'300 patent; the **'056** patent is also related to the '458 patent. (*See* '056 patent, 1:9-13,
34-50) The **'359** patent is a continuation of U.S. Patent No. 7,856,379, which is a
continuation of the '942 patent, which is a continuation-in-part of the '300 patent. The
**'359** patent is also a continuation-in-part of the U.S. Patent No. 6,405,174, which in turn
is a continuation-in-part of the '300 patent. (*See* '359 patent, 1:7-26)

## III. STANDARD OF REVIEW

Once jurisdiction is challenged, the party asserting subject matter jurisdiction has
the burden of proving its existence. *See Carpet Group Int'l v. Oriental Rug Importers
Ass'n, Inc.*, 227 F.3d 62, 69 (3d Cir. 2000). Under Rule 12(b)(1), the court's jurisdiction
may be challenged either facially (based on the legal sufficiency of the claim) or
factually (based on the sufficiency of jurisdictional fact). *See* 2 *James W. Moore,
Moore's Federal Practice* § 12.30[4] (3d ed. 1997). Under a facial challenge to
jurisdiction, the court must accept as true the allegations contained in the complaint.
*See id.* Dismissal for a facial challenge to jurisdiction is "proper only when the claim
'clearly appears to be immaterial and made solely for the purpose of obtaining
jurisdiction or . . . is wholly insubstantial and frivolous.'" *Kehr Packages, Inc. v. Fidelcor,
Inc.*, 926 F.2d 1406, 1408-09 (3d Cir. 1991) (quoting *Bell v. Hood*, 327 U.S. 678, 682
(1946)).

Under a factual attack, however, the court is not "confine[d] to allegations in the .

5

. . complaint, but [can] consider affidavits, depositions, and testimony to resolve factual issues bearing on jurisdiction." *Gotha v. United States*, 115 F.3d 176, 179 (3d Cir. 1997); *see also Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891-92 (3d Cir. 1977). In such a situation, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Carpet Group*, 227 F.3d at 69 (quoting *Mortensen*, 549 F.2d at 891). Although the court should determine subject matter jurisdiction at the outset of a case, "the truth of jurisdictional allegations need not always be determined with finality at the threshold of litigation." 2 Moore § 12.30[1]. Rather, a party may first establish jurisdiction "by means of a nonfrivolous assertion of jurisdictional elements and any litigation of a contested subject-matter jurisdictional fact issue occurs in comparatively summary procedure before a judge alone (as distinct from litigation of the same fact issue as an element of the cause of action, if the claim survives the jurisdictional objection)." *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 537-38 (1995) (citations omitted).

Article III standing requires: "(1) an injury-in-fact . . . ; (2) a causal connection between the injury and the conduct complained of; and (3) that it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Winer Family Trust v. Queen*, 503 F.3d 319, 325 (3d Cir. 2007). To have standing, "the 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (quoting *Sierra Club v. Morton*, 405

6

U.S. 734, 734-735 (1972)).

Plaintiff bears the burden of establishing that it has standing to bring an action for patent infringement. *Sicom Sys., Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 976 (Fed. Cir. 2005). The Patent Act provides that "[a] patentee" is entitled to bring a civil action for patent infringement. 35 U.S.C. § 281. The term "patentee" includes "not only the patentee to whom the patent was issued but also the successors to the patentee." Id. at § 100(d). These sections "have been interpreted to require that a suit for infringement of patent rights ordinarily be brought by a party holding legal title to the patent." *Propat Intern. Corp. v. RPost, Inc.*, 473 F.3d 1187, 1189 (Fed. Cir. 2007) (citing *Sicom Sys. Ltd.*, 427 F.3d at 976); *see also Mars, Inc. v. Coin Acceptors, Inc.*, 527 F.3d 1359, 1367 (Fed. Cir. 2008); *Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 240 F.3d 1016, 1017 (Fed. Cir. 2001). A party that holds the exclusionary rights to a patent suffers constitutional injury-in-fact. *See Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1341 (Fed. Cir. 2007).

## IV. ANALYSIS

The parties dispute whether the Settlement Agreement transferred all rights to the three patents-at-issue - the '470, '056, and '359 patents - to eBay on December 9, 2011, thus terminating plaintiff's constitutional standing to pursue the above captioned litigation. In Delaware, the interpretation of contracts is a matter of law for the court to determine. *See Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del. 1992). A court's interpretation of a contract "will give priority to the parties' intentions as reflected in the four corners of the agreement." *GMG Capital*

*Invs., LLC v. Athenian Venture Partners I, L.P.*, 36 A.3d 776, 779 (Del. 2012) (citing *Paul v. Deloitte & Touche, LLP*, 974 A.2d 140, 145 (Del. 2009)). "In upholding the intentions of the parties, a court must construe the agreement as a whole, giving effect to all provisions therein." *E.I. du Pont de Nemours and Co. v. Shell Oil Co.*, 498 A.2d 1108, 1113 (Del. 1985) (citations omitted). "[T]he meaning which arises from a particular portion of an agreement cannot control the meaning of the entire agreement where such inference runs counter to the agreement's overall scheme or plan." *Id.* "[I]f part of the contract is irreconcilable with the main purpose of the contract, that part will be given no effect in order that the main purpose of the contract can be achieved." 11 Williston on Contracts § 32:9 (4th ed.).

If a contract's terms are clear and unambiguous, the court will interpret such terms according to their ordinary and usual meaning. *See Paul*, 974 A.2d at 145. Contract terms are held to be clear and unambiguous "when they establish the parties' common meaning so that a reasonable person in the position of either party would have no expectations inconsistent with the contract language." *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997) (citing *Rhone-Poulenc*, 616 A.2d at 1196). "A contract is not rendered ambiguous simply because the parties do not agree upon its proper construction. Rather, a contract is ambiguous only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings." *Rhone-Poulenc*, 616 A.2d at 1195. If a court determines that a contractual provision is ambiguous, the "court may consider evidence of prior agreements and communications of the parties as well as

8

trade usage or course of dealing." *Eagle Indus.*, 702 A.2d at 1233.

The Settlement Agreement ostensibly includes two separate conveyances of rights from plaintiff to eBay: a nonexclusive license to some 544 patents and patent applications listed on Appendix B, and ownership rights to a subsection of those patents and patent applications as listed on Schedule A. The language used to describe the intellectual property conveyed is different in both instances; nonetheless, each conveyance is effected using very broad language. In divining whether plaintiff conveyed ownership rights to the patents-at-issue through operation of Exhibit A/Schedule A, the court starts with the basic principle that it "must give effect to all terms of the instrument, must read the instrument as a whole, and, if possible, reconcile all the provisions of the instrument." *See Dow Chemical Co. v. Nova Chemicals Corp.*, 458 Fed. Appx. 910, 914 (Fed. Cir. 2012) (citing *Elliott Assocs. v. Avatex Corp.*, 715 A.2d 843, 854 (Del. 1998)).

The first sentence of Section 1.1 of Exhibit A assigns the term "Transferred Patents" to those patents "described on Schedule A." The second sentence further defines the term "Transferred Patents" to include "**all**" related patents "whether filed by Seller or Purchaser" and regardless of filing date.[4] *See Regents of the Univ. of New Mexico v. Knight*, 321 F.3d 1111, 1120 (Fed. Cir. 2003) (holding that a patent policy covering "all divisions, continuations, substitutions, renewal, and reissue applications" was "more than sufficient" to require inventors to assign continuation-in-part

---

[4]The record indicates that eBay added the language "whether filed before, on, or after the effective date" to the second sentence of Section 1.1, another indication that eBay intended to receive more than just those patents and applications described on Schedule A. (D.I. 12-140, D.I. 77, ex. XIII at 53)

9

applications). To ignore the second sentence of Section 1.1 would conflict with the "general principle[] of contract law, [that] a contract should be interpreted in such a way as to not render any of its provisions illusory or meaningless." *Sonitrol Holding Co. v. Marceau Investissements*, 607 A.2d 1177, 1183 (Del. 1992) (citing *Seabreak Homeowners Ass'n v. Gresser*, Del. Ch., 517 A.2d 263, 269 (1986), *aff'd*, 538 A.2d 1113 (Del. 1988).

Comparing the language used by the parties throughout the entire transaction, plaintiff described its "PATENT RIGHTS" for purposes of the licensing agreement as comprising those patents and patent applications listed on Appendix B. Despite this broad grant, plaintiff more specifically described the property licensed as "including but not limited to . . . the entire families of" the '942 and '056 patents, further described as "including but not limited to all of their parents, **continuations, continuations-in-part, divisionals, reissues, and re-examinations**."[5] (Civ. No. 11-313, D.I. 244, ex. I at 3) (emphasis added) In contrast, the term "Transferred Patents," for purposes of Exhibit A, was comprised of those patents and patent applications listed on Schedule A, further described using virtually the same language as above: "all counterparts, **continuations, continuations-in-part, divisionals, reissues, reexamintions**, and extensions thereof, and all current, future, or abandoned patents and patent applications . . . claiming priority from, derived from, or related to any of the foregoing in any jurisdiction." (*Id.* at 53) (emphasis added) The court cannot discern the difference

---

[5]Plaintiff's argument that the identification of the '056 patent in this section clearly shows that it did not transfer the '056 patent rings hollow as all of the issued patents listed on Schedule A (held out by plaintiff to be a complete list of Transferred Patents) are also listed on Appendix B (seemingly the list of licensed patents).

between the breadth of these two descriptions and finds this "granting" language to be unambiguous.[6]

The court concludes that, under the broad granting language of Exhibit A, the Settlement Agreement clearly transferred ownership rights of the '359 patent to eBay. Therefore, the motions to dismiss Civ. Nos. 12-140, 12-141, and 12-142 are granted.[7]

With respect to the '470 and '056 patents, the broad granting language is inconsistent with plaintiff's warranty that none of the Transferred Patents were the subject of litigation (Civ. No. 11-313, D.I. 244, ex. I at 54, Section 3.1(e)), as plaintiff was actively litigating the '942 patent (Civ. No. 11-315), as well as the '470 and '056 patents (Civ. No. 11-313), at the time of the Settlement Agreement.[8] While a court should seek to give meaning to all provisions of a contract if possible, when "irreconcilable differences between contract clauses [arise, the court] is to enforce the clause relatively more important or principal to the contract." 11 Williston on Contracts §§ 32:5, 32:9; c.f. Ludwig Honold Mfg. Co. v. Fletcher, 405 F. 2d 1123, 1131 (3rd Cir.

_____

[6]Compare, e.g., the language at issue in Dow, a case relied upon by plaintiff for this argument in its briefing in Civ. No. 12-140. (Civ. No. 12-140, D.I. 87 at 8-10) In Dow, the **only** affirmative description of the transferred patents was the following: "The parties shall provide a schedule of Patent Rights as Schedule A to this Agreement, within ninety (90) days of the Effective Date, and shall provide subsequent supplements thereto from time to time during the Term." Dow, 458 Fed. Appx. at 913. The Federal Circuit held that this sentence "makes it abundantly clear that Dow and DGTI intended Schedule A to include a list of all of the transferred patents (among other things)." Id. at 914. For Dow to be applicable to the facts at bar, Section 1.1 would have to be limited to the first sentence which, clearly, is not the case.

[7]Thus, plaintiff's motions to dismiss without prejudice are rendered moot. (Civ. No. 12-140, D.I. 105; Civ. No. 12-141, D.I. 81; and Civ. No. 12-142, D.I. 73)

[8]The '359 patent was not in litigation at the time of the Settlement Agreement and was not mentioned in any of eBay's submissions.

11

1969) (citing 22 Williston § 619) ("Where ambiguity exists, the minor provisions must be construed as not to conflict with the main purpose of the contract.").

Plaintiff's parol evidence does not help the court resolve this conflict. In this regard, the record contains a letter from eBay which states in toto: "This confirms that eBay Inc. is not the owner of [the '470 and '056 patents]. eBay Inc. reserves all rights and no other rights, express or implied, are granted."⁹ (Civ. No. 11-313, D.I. 254, ex. 6) The record also contains the declaration of Anup Tikku, Senior Patent Counsel at eBay, wherein he avers that plaintiff and eBay did not intend to transfer the rights to patents in litigation at the time of the transfer. (Civ. No. 11-313, D.I. 291, ex. 1)

The court declines to elevate a standard warranty clause above unambiguous granting language - the clear purpose of the document. This seeming conflict does not render performance of the contract impossible or meaningless, as it was (and continued to be) easily cured through amendment or otherwise. Indeed, plaintiff dismissed Civ.

---

⁹This ambiguous language is a far cry from the clear language used by the parties in *IpVenture* to confirm the status of a patent-in-suit. *IpVenture, Inc. v. Prostar Computer, Inc.*, 503 F.3d 1324, 1326-27 (Fed. Cir. 2007). In *IpVenture*, the Federal Circuit considered whether Hewlett-Packard, the employer of a co-inventor of the patent-in-suit, had an ownership interest in the patent. Hewlett-Packard expressly disclaimed its patent rights in an agreement written during the pendency of the litigation:

> IpVenture is the sole assignee of [the '235 patent and other patents] ... [Hewlett-Packard] has never asserted any ownership rights to the IpVenture Patents and agrees to forbear from asserting such rights at anytime in the future ... [Hewlett-Packard] has no rights ... and never has had any legal or equitable rights, including any shop rights, to any of the IpVenture Patents.

*IpVenture*, 503 F.3d at 1326-27. The Federal Circuit held that this confirmation of the patent status removed the need to construe an employment agreement controlling Hewlett-Packard's interest in the patent. *Id.* at 1327.

No. 11-315 as to eBay after entering into the Settlement Agreement, and then subsequently dismissed the case as to the other defendants. (*See, e.g.*, Civ. No. 11-315, D.I. 159, 338-40) Neither is eBay's letter, which purports to "reserve[] all rights," explicit enough to circumvent the clear language of the contract.

Given the complexity of plaintiff's patent portfolio[10] and the sophistication of the parties to the Settlement Agreement, the court relies on the unambiguous granting language rather than the equivocal parol evidence to divine what the parties meant to accomplish through the Settlement Agreement. *Demetree v. Commonwealth Trust Co.*, No. 14354, 1996 WL 494910, at \*4 (Del. Ch. Aug. 27, 1996) ("An inquiry into the subjective unexpressed intent or understanding of the individual parties is neither necessary nor appropriate where the words of the contract are sufficiently clear to prevent reasonable persons from disagreeing as to their meaning."). Therefore, the court grants defendants' motion to dismiss Civ. No. 11-313.

## V. CONCLUSION

For the foregoing reasons, defendants' motions to dismiss under Rule 12(b)(1) for lack of standing (Civ. No. 11-313, D.I. 242; Civ. No. 12-140, D.I. 75; Civ. No. 12-141, D.I. 52; and Civ. No. 12-142, D.I. 44) are granted. Amazon and Zappos' motion for leave to file amended answers to assert lack of standing as an affirmative defense (Civ. No. 11-313, D.I. 258) is denied as moot.

---

[10]According to Appendix B, plaintiff owned 389 patents and 155 patent applications at the time of the transfer, many (if not most) of them related.